**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>APRIL ELIZABETH BERGMAN,<br><br>                  Defendant. | **DEFENDANT'S SENTENCING MEMORANDUM**<br><br>Case No.: 3:23-cr-00172 |

[¶1]    Comes now the Defendant, April Elizabeth Bergman (hereinafter "April"), by and through her attorney, Scott Patrick Brand, and submits this Sentencing Memorandum for the Court's consideration.  April respectfully requests this Court for a sentence of two (2) years, followed by three (3) years of supervised release with a $100.00 Special Assessment.  The reasons for this request are set forth below.  April reserves the right to make additional argument at the time of the sentencing hearing on July 17, 2024.

## PROCEDURAL HISTORY

[¶2]    Before April was federally indicted, she was incarcerated at the North Dakota Women's Correctional and Rehabilitation Center, serving time for a parole violation on August 2, 2023, in the State of North Dakota.  April was arrested for said violation on July 25, 2023.  After the United States of America filed its Indictment with the Court on September 14, 2023, it filed a Motion for Writ of Habeus Corpus ad prosequendum on September 21, 2023, which the Court signed on the same day.  April made her Initial Appearance in front of this Court on October 3, 2023.  The Court signed an Order of Detention on the same day.

[¶3]    A Plea Agreement and Plea Agreement Supplement were filed with this Court on February 5, 2024.  A sentencing hearing is tentatively set for July 17, 2024, at 9:00 a.m.  April

has remained in federal custody ever since being served with the Writ of Habeus Corpus ad

prosequendum and has been in continual custody between the State of North Dakota and the

United States since July 25, 2023.

## OFFENSE LEVEL

[¶ 4]    The parties agree that the base offense level under the Sentence Guidelines is 20.

The parties also agreed to the following upward departures:  (1)  a 2-level upward departure

because the offense involved three or more firearms; (2) a 2-level upward departure because the

firearms in question were stolen; (3) a 2-level upward departure because April was convicted

under 18 U.S.C. § 933(a)(2), and; (4) a 4-level upward departure because the firearms in

question were used in connection with another felony.  The parties agreed to give April credit for

her acceptance of responsibility, warranting a total reduction of 3 points.  Therefore, April's

calculated Total Offense Level is 27.  The parties agree April's criminal history places her in a

Criminal History Category of VI.  The advisory calculation from the United States Sentencing

Guidelines for an Offense Level of 27 and a Criminal History Category of VI is 130-162 months.

## SENTENCING FACTORS

[¶ 5]    The Federal Sentencing Guidelines are no longer mandatory and judicial

discretion has been expanded extensively over the past decade.  See United States v. Booker, 543

U.S. 220, 260-61 (2005); Gall v. United States, 552 U.S. 38, 59 (2007); Kimbrough v. United

States, 552 U.S. 85, 101 (2007); Rita v. United States, 551 U.S. 338, 349-50 (2007).  The Court

has stated that while the guidelines should be respectfully considered, courts may tailor their

sentencing decisions in light of other statutory considerations. Kimbrough, 552 U.S. at 101.  This

language has led to federal courts using the statutory guidelines only as a starting point in their

analysis.  United States v. Washington, 515 F.3d 861, 865 (8th Cir. 2008) (citing Gall, at 596).

[¶ 6]    However, all sentences must be reasonable.  In <u>Nelson v. United States</u>, the

Supreme Court stated that "[g]uidelines are not only *not mandatory* on sentencing courts; they

are also not to be *presumed* reasonable." 555 U.S. 350, 352 (2009) (emphasis in original).  Thus,

a sentencing court is not permitted "[t]o presume that a sentence within the applicable Guidelines

range is reasonable." <u>Id.</u>  Rather, a sentencing court "[m]ust first calculate the Guidelines range,

and then consider what sentence is appropriate for the individual defendant in light of statutory

factors." <u>Id.</u> at 351.

[¶ 7]    Under the relevant 18 U.S.C. § 3553(a) factors, the court "shall impose a sentence

sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)

of this subsection." 18 U.S.C. § 3553(a).

### A.  *The Nature of the Offense and History and Characteristics of the Defendant*

[¶ 8]    The nature of the offense is indicated by the total offense level discussed above.

April understands the charges she is pleading guilty to are serious.  April agreed to the upward

departures of her offense level understanding the seriousness of this case.

[¶ 9]    April's history is one filled with the struggles of a damaged childhood and the

fallout of abuse percolating through her adult life.  In many ways, it seems like April has fallen

through the cracks of society instead of receiving the help she needs and deserves.  As the PSIR

notes, "[April's] upbringing was filled with abuse from both parents.  Her father was an alcoholic

and would verbally and physically abuse her mother in front of the children.  In turn, her mother

would abuse the children.  At the age of 14, [April] was removed from the home."

[¶ 10]   The abuse did not just come from her parents.  On top of the abuse she sustained

at home, "[April] has experienced sexual abuse in the past.  She was sexually assaulted by

neighbors from the ages of six to nine." April was also exposed to emotional and physical abuse "by her past relationships and her parents."

[¶ 11]   April has been incarcerated since July 25, 2023.  Now that she is sober and able to see things clearly thanks to proper medical care, she is dedicated to maintaining that sobriety. April has put in the work to get enrolled into treatment after her release from custody to help her maintain that sobriety and the letters submitted on her behalf support the idea of April living in a treatment facility.  If the Court grants her request for a sentence of two years, April will be able to establish a treatment plan and immediately transition into a treatment program upon her release.

[¶ 12]   The letters submitted on April's behalf reiterate the same theme that is present throughout this Sentencing Memorandum.  Each letter acknowledges April's struggles with her past trauma and mental health as the underlying causes for her criminal activity.  However, each letter also acknowledges how successful April can be when properly medicated and monitored. One letter commented on how April is aging "out of her old lifestyle and coming into a new life of healing, sanity, forgiveness and peace through her Bible study."  Another letter states that when April is sober, she can be quite successful.  April's brother potentially says it best in his letter when he says, "I see the potential and what she can do, if given the right tools:  like therapy, proper medical attention, medications and a stable place to live."  More so than incarceration, April needs supervision and guidance to help her maintain a healthy mind and stable life.  It is April's hope that the Court sees her potential and allows her to get treatment and supervision outside of incarceration.

### B.  *The Need for the Sentence Imposed*

[¶ 13]   A sentence should "reflect the seriousness of the offense, to promote respect for

the law, and to provide just punishment for the offense."  18 U.S.C. § 3553(a)(2)(A).  There is no

doubt the criminal activity in this case is serious.  April acknowledges the severity of her

conduct.  However, April has now already spent over ten months incarcerated and it is important

to remember that her journey to recovery and sobriety will be a continual work in progress.

April's hope is to transition to a treatment facility after serving her sentence.  A shorter period of

incarceration with a focus on supervision and treatment upon release allows April to focus on

rehabilitation.

[¶ 14]   Second, the Court must impose a sentence "to afford adequate deterrence to

criminal conduct."  18 U.S.C. § 3553(a)(2)(B).  April has been deterred with the time she has

already spent in custody.  April knows that even if she is released and allowed to do treatment, in

order to put this fully behind her, that she will have to routinely check in with probation, subject

herself to searches, and maintain her current course to successfully complete her supervised

release.  She wants to be there for her children and grandchildren and make up for the time she

has already lost.  This is the type of high structured/supervised environment that April needs to

succeed.  April sees the positives that come from a sober and productive life and will continue to

grow as a positive example for those around her.

[¶ 15]   The third consideration when determining the need for the sentence imposed is

"to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a)(2)(C).  The last

ten months have already deterred April from participating in future criminal conduct.  Almost all

of April's criminal history revolves around mental health struggles and drug use.  April is now

properly medicated and is sober.  If April can stay clean and sober there will be no future crimes

coming from her.  April cannot fully put into words the amount of regret she feels for her role in this activity and apologizes for her actions.  If April can maintain her current sobriety and stay on top of her mental health issues, the chances of her re-offending are minimal.  This is especially true if April is afforded access to tools and supports during her supervised release.

[¶ 16]  The fourth consideration when determining the need for the sentence imposed is "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2)(D).  A sentence of two years will allow April to get the training and treatment that she needs.  Recognizing that April needs treatment after her release shows her maturity and understanding of the need to address the issues that lead to her use.

### C.  The Kinds of Sentence and the Sentencing Range

[¶ 17]  The Guideline calculation was discussed above.  It is important to remember that the Guidelines are "advisory," and merely "serve as one factor among several courts must consider in determining an appropriate sentence."  Kimbrough v. United States, 552 U.S. 85, 90 (2007) (citing United States v. Booker, 543 U.S. 220, 244 (2005)).  The ultimate goal is a sentence that is not greater than necessary to satisfy the statutory purposes of sentencing, with due consideration to the characteristics of the offender and circumstances of the offense.  Id. at 101.  Further, a sentence outside the Guidelines does not require extraordinary circumstances or the use of a rigid mathematical formula.  Gall v. United States, 552 U.S. 38, 47 (2007).  The Court "may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented."  Id. at 50.

### D.   Any Pertinent Policy Statement

#### 1.   USSG § 4A1.3(b)(1)

[¶ 18]   Reliable information does exist to show that April's Criminal History Category substantially over-represents the seriousness of her criminal history.  As the mental health records show, April has slipped through the cracks of proper and adequate treatment.  A childhood filled with abuse and trauma and never given a proper mentor or a meaningfully positive influencer, April's lot in life was doomed from the start. Surrounded by others' addictions and abusive behavior, April was thrust into a life of addiction as a young child.  April used this as a way to escape the terrible realities of her life, unfortunately leading to a life of bad decisions without the proper network of support needed to steer her in the right direction.

[¶ 19]   April has been diagnosed with numerous disorders such as PTSD, Unspecified Mood Disorder, Cannabis Use Disorder, Amphetamine Use Disorder, Alcohol Use Disorder, Antisocial Personality Disorder, Stimulant Use Disorder, Impulsiveness, Schizoaffective Disorder (Bipolar Type), ADHD, Anxiety, Delusion, Disorganized Thinking, Paranoia, Hypertension, and more.  April has been heavily medicated for the majority of her life.  April's counselors have admitted, "[t]here is significant risk associated with Apil Bergman's recovery environment. She has no meaningful engagement and her social living environment is unsupportive." Yet, somehow, these same counselors decided that April did not need inpatient therapy. April was left to navigate life with no support system, put on a variety of different prescriptions, and continuously found herself in precarious situations.

[¶ 20]   When not properly medicated, April can exhibit moments of confusion, anger, and delusion. April has created scenarios that are made up in her head and believed them to be true so much so that she has done things believing she was told to do so, including the actions taken in

the case at bar. There have been times where April has not recognized a counselor she had spoken with before but then suddenly remembered moments later. April's thought process is short term. April will often agree to something during a session with her counselor, then a few days later be angry about the situation and refuse what was agreed to.

[¶ 21]   On top of the mental health issues and medications April has been subjected to, she was diagnosed with malignant neoplasm of lung, unspecified laterality, unspecified part of lung, or lung cancer in 2018. For four months in a row April endured the four chemotherapy cycles, being pumped with chemicals, some with labels warning that the medication is a high-risk cytotoxic drug that requires wearing two pairs of gloves to administer. April was also put on an at-home regimen between chemotherapy cycles. April suffered what is known as "chemo brain." This caused April to have delusions and experience psychosis until a doctor had finally prescribed her with an antipsychotic. Since being on this antipsychotic, April has been much better.  The undersigned has worked with April since her medications have been properly administered and firmly believes that continued medication along with proper supervision and support can give April an opportunity to have a "normal" life moving forward.  April has been dealt a bad hand in life.  She needs a stable environment with a support system to keep her on track.

[¶ 22]   A good portion of April's criminal history is enveloped in April's struggles with reality and mental health.  Had April grown up in a loving home, a place where substance abuse, physical abuse, sexual abuse, and emotional abuse were not prominent, perhaps April would have no criminal history to discuss.  But that was not the life that April was given.  Had society stepped in and offered April appropriate mental health treatment along with a structured environment to deal with her trauma, perhaps April could have curtailed her criminal tendencies.

But that also did not happen. Had April received proper mental health care, especially after her diagnosis and treatment for lung cancer in 2018 and beyond, she would likely not have believed that a famous rapper was telling her to get and hide firearms, resulting in the case at bar. But that, again, did not happen. April's criminal history category substantially over-represents the seriousness of her criminal history, as the entirety of said criminal history is the product of April's trauma and lack of support. Now, April is properly medicated, sober, and willing to engage in treatment and aftercare to ensure she remains law abiding and productive. Because of this, a downward departure is warranted in the case at bar pursuant to USSG §4A1.3(b)(1).

### 2. *State Sentence and USSG § 5K2.23*

[¶ 23] The Department of Justice made a rule, eventually called "The Petite Policy," which essentially says that following a state prosecution for certain crimes, that the federal government will not prosecute for the same crime unless there are compelling federal interests. See Black's Law Dictionary 1329 (Deluxe 10th ed. 2014). April's acts in the state case stem from the same drug problem that landed her with this federal case. In fact, some of the acts that caused April's parole to be revoked at the state level are directly mentioned as part of The Offense Conduct in the PSIR. April is not saying that this case should not have been prosecuted. She accepts that what she did was entirely criminal, and that the federal government had every right to prosecute her. What April is hoping for is that she be given credit for her time served in state facilities in order to not make her federal sentence essentially become a consecutive sentence to the state sentence.

[¶ 24] Further, it appears USSG § 5K2.23 may apply to this case. Under 5K2.23, a departure may be appropriate if the defendant (1) has completed serving a sentence of imprisonment; and (2) subsection (b) of § 5G1.3 would have provided a sentence reduction had

the completed term of imprisonment been undischarged at the time of the defendant's federal sentencing.  It appears April satisfies both requirements.

[¶ 25]  First, the term of imprisonment (via the parole revocation) April has completed serving was for offense conduct for the instant offence.  These offenses were in furtherance of April's drug activities.  Next 5G1.3(b) would have provided for a sentence reduction had this completed sentence been undischarged at the time of April's federal sentencing.  Consequently, "the court shall adjust the sentence for any period of imprisonment already served . . . if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons."  USSG § 5G1.3(b)(1).  Because April's imprisonment is a state conviction, it will not be credited by the BOP.

[¶ 26]  To remedy this, the Court should reduce whatever sentence it ultimately imposes by 52 days.  That is the time from July 25, 2023, when April was arrested for her parole revocation in North Dakota, to September 14, 2023, which is when April was federally indicted.  As a reminder, April has been in continual custody between the State of North Dakota and the United States since July 25, 2023, which is 11 months and 22 days at the time of sentencing.

*3. USSG § 5K2.13*

[¶ 27]  The Guidelines allow for a downward departure if "(1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense."  USSG § 5K2.13.  There is no dispute that April was suffering from a significantly reduced mental capacity that contributed substantially to the commission of her offense.

[¶ 28]  April's mental health struggles have been documented throughout the PSIR and this Sentencing Memorandum.  Specifically, the PSIR found the following:

During the presentence interview, Bergman stated at the time of the instant offense she was not taking her mental health medications and believed she was dating a famous singer, Kevin Gates (Gates). She thought that the guns were sent to her by Gates to protect her family. During this time, she was on leave from her job, on probation with the state of North Dakota, and was too paranoid to buy ammunition.

[¶ 29]  These paranoid delusions are also echoed in the letters submitted on April's behalf. One letter stated that they felt like "it seemed like [April] was losing her mind slowly and out of touch with reality thinking things such as imaginary people, says that she sees ghosts, thought that she was dating superstars…." Another letter discussed how April thought that a deceased rapper named Tupac wanted to meet her in Denver and that she was "acting like a 5 year old." These firsthand observations from those around April appear to line up with the diagnoses that April has been given from various mental health professionals, including PTSD, major depressive disorder, schizophrenia spectrum, anxiety disorder, and so much more. Because April was struggling with a significantly reduced mental capacity that contributed substantially to the commission of her offense, a downward departure is warranted in the case at bar pursuant to USSG § 5K2.13.

### E.  Avoiding Unwanted Sentence Disparities

[¶ 30]  There is one other co-defendant in this case. That matter is set for a sentencing hearing on September 3, 2024 at 2:30 p.m. Although these two co-defendants should be treated equally, a rigid application of the United State Sentencing Guidelines to their respective cases treats them as anything but such.

[¶ 31]  April's Base Offense Level starts at a 20 because she committed the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance. However, Mr. Johnson's Base Offense Level starts at a 14 because the parties did not make the same finding about Mr. Johnson's prior felony cases. Mr. Johnson has a

criminal history that involves many drug offenses, just like April.  However, as the result of assumed plea bargaining, many of the felony drug offenses that would have placed Mr. Johnson in the same Base Offense Level as April were dismissed as a result of him pleading to other charges.  Further, although it appears not to qualify under the Guidelines, Mr. Johnson does have felony convictions for things like burglary and felony drug possession.  Here, the Guidelines treat these two similarly situated defendants and their criminal history drastically different.

[¶ 32]  Another disparity comes in the Total Offense Level computation.  April is receiving a two-point enhancement because she is being convicted under 18 U.S.C. § 933(a)(2), as she received the firearms from Mr. Johnson knowing that such receipt would constitute a felony.  Even though Mr. Johnson was the person who stole and delivered the firearms to April, he is not receiving this same enhancement because his conviction appears to be under 18 U.S.C. § 933(a)(1).  This disparate outcome, where the thief and distributor of the firearms in question receives no enhancement for his acts in delivering the firearms while the recipient gets an additional two-point enhancement surely cannot be the intent of those behind the Sentencing Guidelines.  April's Plea Agreement was signed and filed with the Court prior to Mr. Johnson's Plea Agreement.  Therefore, neither April nor her counsel had reason to know that these two similarly situated defendants were being treated differently under the Guidelines at the time.

[¶ 33]  As a result of a rigid application of the Guidelines, April's Total Offense Level comes out at 27 points where Mr. Johnson's Total Offense Level is 19.  Depending on their Criminal History Category, applying the Guidelines differently to these similarly situated defendants results in a sentencing disparity of around at least 63 months, according to the undersigned's review of the Guidelines.  In the hope of treating these defendants equally, April is respectfully asking the Court to treat her Total Offense Level the same as Mr. Johnson's.

[¶ 34]   Recently, this Court issued a sentence in a case where a defendant pled guilty to Possession of a Firearm by a Prohibited Person.  See United States of America v. Marcus Brian Rexrode, 3:23-cr-00152.  With similar charges to the case at bar, the Court sentenced the defendant in that case to 120 months.  Id.  However, the facts in that case are not similar to the facts in the case at bar.  In that case, the defendant illegally possessed a firearm that he brought to a drug deal that ultimately led to the shooting and death of a juvenile.  Unlike that case, April never shot the firearms she received from Mr. Johnson, and no one died as a result of her possession.  In fact, April was so paranoid about possessing the firearms in the case at bar that she refused to even so much as buy ammunition for them.  If an individual who illegally possesses a firearm and uses that firearm in a homicide is sentenced to 120 months, April's sentence should be drastically lower considering she never intended to use or equip her firearms with ammunition.

### F. Restitution

[¶ 35]   There is no amount of restitution alleged in this case and therefore should not be considered as part of April's sentence.

## RESIDENTIAL DRUG ABUSE PROGRAM AND FEDERAL BENEFITS

[¶ 36]   If the Court concludes that a sentence to a term of imprisonment with the Bureau of Prisons is an appropriate sentence in the case at bar, April respectfully asks the Court to recommend her participation in the Residential Drug Abuse Program (RDAP).  In cases similar to the case at bar, federal law does allow for a reduction in sentence based upon entry into and completion of RDAP.  April respectfully requests the Court to issue a finding that she has a history of substance abuse which has led to legal problems, risky behaviors, and a disruption of her relationships with family, friends, and others in the community.  April is requesting to

receive and not be denied any other benefits or reductions under federal law at the time of her sentencing.

## **BUREAU OF PRISON DESIGNATION**

[¶ 37]   April respectfully requests the Court recommend placement at the Bureau of Prisons' lowest security level facility that can address her treatment needs, specifically:

1.  FCI Waseca – Low Security Federal Correctional Institution.

2.  FCI Phoenix – Medium Security Federal Correctional Institution with Adjacent Minimum Security Satellite Camp.

3.  FCI Pekin – Medium Security Federal Correctional Institution with Adjacent Minimum Security Satellite Camp.

4.  FCI Greenville – Medium Security Federal Correctional Institution with Adjacent Minimum Security Satellite Camp.

## **CONCLUSION**

[¶ 38]   April has admitted guilt to, and accepted responsibility for, her role in this crime. April has been in continual custody since July 25, 2023.  For these reasons, April respectfully requests this Court consider a sentence of two (2) years, followed by three (3) years of supervised release with a $100.00 Special Assessment.

Dated this 26th day of June, 2024.

Scott Patrick Brand

**Scott Patrick Brand**
**N.D. Bar I.D.:  07287**
NILSON BRAND LAW
Attorney for the Defendant
5141 44th St. S.
Fargo, ND 58104
Phone: (701) 786 – 6040
Email:  scott@nilsonbrandlaw.com